City of Lincoln v. Staley.

CITY OF LINCOLN V. LIZZIE STALEY.

[FILED MAY 6, 1891.]

1. **Trial:** CHANGE IN DOCKETED DATE OF. A district court has authority to make a reassignment of the cases on the docket so as to facilitate the dispatch of business before the court, and if such reassignment does not take affect for two or three days after the order is made, so that a party has a reasonable opportunity to summon his witnesses, it will not be error to proceed with the trial of a case.

2. ———: ———: CASE STATED. An attorney having an important case in court, in a friendly conversation with one of the the judges of the district, stated that he was about to go to Washington to attend the hearing of a case before the United

States supreme court, and that, as his case in the district court was set for the 24th, he would try and return prior to that time and be prepared to try the case. The judge expressed the opinion that, in all probability, the criminal business before the court would occupy the attention of the court until the 24th inst. The criminal business was tried before another judge and disposed of by the 14th of the month. Both judges thereupon made a new assignment of the cases on the docket, to take effect on the following Monday, and the case spoken of, being reached under the new assignment, was tried before the return of the attorney from Washington. *Held*, No error.

3. ———: SURPRISE. Where a case is called which a party is not prepared to try, he should move for a continuance, stating the grounds on which a continuance is sought, supported, if necessary, by affidavits.

4. ———: ABSENT WITNESSES: WAIVER. Where, after a trial has begun, a party discovers that some of his witnesses are not present, and he cannot safely proceed without their testimony, he should show those facts to the court by affidavit, together with a statement of facts as to the diligence used by him to procure their attendance, and ask to have the case deferred, or for leave to withdraw a juror and continue the cause at his costs if he is at fault, to a later day in the term. He cannot proceed with the trial and, after a verdict against him, rely upon these facts as grounds for a new trial.

5. Verdict, *held*, to be fully sustained by the evidence.

6. Cities: UNSAFE SIDEWALKS. The essential fact as to the condition of the sidewalk was that it was in a broken and unsafe condition.

ERROR to the district court for Lancaster county. Tried below before CHAPMAN, J.

*G. M. Lambertson* (*H. J. Whitmore* with him) for plaintiff in error, cited: *Griswold v. Shaw*, 79 Ill., 449; *Kirkland v. Sullivan*, 43 Tex., 233; *Fawell v. Comm.*, 11 Miss., 127; *Mattingly v. Bosley*, 2 Metc. [Ky.], 443; *Hill v. Webber*, 50 Mich., 142.

*E. P. Holmes*, and *J. R. Webster*, *contra*, cited: Maxwell, Pl. & Pr., 440–1; *Smith v. Anderson*, 18 Md., 520.

MAXWELL, J.

This action was brought in the district court of Lancaster county by the defendant in error against the plaintiff in error, to recover damages for injuries sustained by her, caused by a defective sidewalk in the city of Lincoln. The jury returned a verdict in favor of the defendant in error for the sum of $1,250, and a motion for a new trial having been overruled, judgment was entered on the verdict.

One of the principal errors relied upon by the plaintiff in error is the alleged irregularity of the court in ordering the case for trial before the time set in the printed docket. In support of this contention the attorney for the city filed the following affidavit:

"G. M. Lambertson, being first duly sworn, upon his oath says that he is the city attorney of the city of Lincoln, defendant in the above entitled action; that on Monday, February 10, 1890, this affiant left the city of Lincoln to attend to an action in the supreme court of the United States at Washington, D. C.; that before leaving this affiant had made arrangements with regard to all cases in which he was attorney then pending in the district court of Lancaster county and which were set for trial within the time the affiant expected to be absent, which was about ten days; that this case was numbered 24 on the law docket of the February term of said court and was set for trial Monday, February 24, 1890; that when affiant departed, the court and jury were then engaged upon the trial of criminal cases in said court, and affiant was informed and saw by the printed docket that the court and jury would be so employed until Friday, February 21, 1890; that affiant returned from the city of Washington on Thursday evening, February 20, 1890, and was on Friday, February 21, informed that the above entitled case had been called for trial and tried on Tuesday and Wednesday, February 18 and

19, 1890; that said defendant was not prepared for trial at said time, and it was not possible to secure the attendance of its witnesses at said time; that J. R. Bing and Joseph R. Ogden were material witnesses for defendant in said trial; that said J. R. Bing was in Grand Island, Nebraska, on the days of said trial, and said Ogden was in Cass county, Nebraska, on said days; that both of said parties had been and the said Bing is still a resident of this city; that said Ogden is now residing in Cass county, Nebraska, but that he has only lately removed from this city; that said witnesses had, shortly after the time of the happening of the alleged accident to plaintiff, each made and sub-scribed affidavits in said cause, and this affiant was informed and believed they would so testify in said cause; that the affidavits so made by said parties are hereto attached and made a part of this affidavit; that affiant was informed by Hon. A. W. Field, judge of this court, some time before leaving for Washington that the first two weeks of the term would be occupied with the trial of criminal cases; that this affiant was the only attorney of record of defendant and was familiar with said cause and prepared to try the same when it should be reached in its regular order; that affiant relied upon said arrangement of said cause on the printed docket, and rules 1, 2, 15, and 16 of this court; the page of said printed docket showing the assignment of this cause, and also rules 1, 2, 15, and 16 are hereto attached and made parts of this affidavit, marked 'Exhibits C and D' respectively; that it has been the uniform custom and practice of this court heretofore to observe the assignment of causes as made in said printed docket, and not to proceed with the trial of any cause prior to the day fixed for hearing the same by the said docket."

We also find the following order in the record:

"The criminal business of the court having been disposed of for the present, it is ordered that the trial of law cases

City of Lincoln v. Staley.

to a jury be commenced on Monday next, the 17th day of February, in their order as they appear on the calendar.

"February 14, 1890.    SAMUEL M. CHAPMAN,
"ALLEN W. FIELD,
"*Judges.*"

There are also the affidavits of Jonathan R. Bing and Joseph R. Ogden, the alleged witnesses, but neither of whom had been subpœnaed nor their depositions taken.

It is evident that the judges acted in perfect good faith as well as the attorney of the plaintiff in error. In friendly conversation with Judge Field, he gave an opinion that the case would not be reached until the 24th. As is often the case, however, in criminal prosecutions some of the parties plead guilty; in others, the state has not sufficient proof, and consequently dismisses them, while the length of the trials which take place must necessarily depend upon the number of witnesses to be examined. No attorney or judge could even approximate in advance the number of days necessary to dispose of the criminal calendar in a county like Lancaster. If the criminal business was disposed of sooner than was expected, no one will contend that it was the duty of the judges to wait several days in order to take up the cases in the order they were assigned by the clerk. In such case the judges have the right to reassign the causes, so that trials will not be delayed and justice denied.

In Lancaster county it is well known that heretofore two judges have been unable to dispose of the business, together with the business of the other counties in the district, as it existed when this trial took place. In addition to this, the attorney for the plaintiff in error was liable to be delayed from the inability of the supreme court to hear him at the time expected or from delay in railway travel, failure of trains to connect, or other causes. These are contingencies that an attorney must provide against. While

his client has rights in the premises, the adverse party has rights also which must be considered.

The charge that the case was taken up out of its order is not supported by the record. Practically the charge is that the plaintiff in error was taken by surprise, and that it was not prepared to make its defense at that time. In such case the proper practice is to file a motion for a continuance, supported by affidavits stating the ground therefor. If, after the jury has been impaneled, witnesses on behalf of a party have absented themselves so that their testimony cannot be had, that fact should be brought to the attention of the court by affidavit, together with the statement of the testimony which was expected to be given by them. The court, on a sufficient showing, will allow the moving party to withdraw a juror and continue the case to a later day in the term or to a succeeding term, but at his costs if he was at fault. A party cannot, however, proceed with the trial without objection and after a verdict against him set up defects as grounds for a new trial which should have been brought to the attention of the court before the case was submitted to the jury. The writer has endeavored to state the rules governing such cases in Pleading and Practice, 5th Edition, 440-442. There was no error, therefore, in setting down the case for trial.

It is claimed that the damages are excessive. Dr. Beachley, of Lincoln, testified:

A. I was called to see her [defendant in error] and found her suffering with an inflamed knee, and the inflammation continued until suppuration of the knee joint took place, matter formed in the knee joint.

Q. What was necessary to do—what did you do for her?

A. In the first instance I applied fomentations to try and allay the inflammation, and I also painted it with iodine to prevent the suppuration. But inflammation run on at a high grade and suppuration was the result. After

City of Lincoln v. Staley.

the matter formed I opened the knee joint and let the matter out and washed out the knee joint with antiseptic washes.

Q. Did you have to do that more than once?

A. I done it twice a day, for six or eight weeks?

Q. How many times or places did you open the joint?

A. I made, as near as I recollect, seven or eight original openings, and opened the same openings several times, when they became nearly closed.

Q. How long did you treat her?

A. Well, I have no date at all, to tell just the exact length of time, but somewheres from two to three months. I don't recollect the exact length of time.

Q. How might an inflammation of that kind be caused; might it be from a fall and a bruise to the joint?

Court: State what produces trouble of that kind.

A. Falls or blows, anything of that character will or might produce sinovitis of that joint.

Q. You may state if this injury is to any extent permanent. What are the results of it?

A. It very often results in anchylosis of the joint, the joint becoming stiff, and where it does not result in anchylosis, it weakens the joint as a rule.

Q. Weakens the vitality of the joint?

A. Yes, sir.

Q. More liable to other troubles there afterwards?

A. Yes, sir.

There is a considerable amount of other testimony to the same effect. The testimony clearly establishes the fact that the sidewalk was in an unsafe condition, and had been so for some considerable time, and that in consequence of the condition of the sidewalk the plaintiff stepped into an aperture therein and sustained a very severe injury. An attempt was made on behalf of the city to limit the ruinous character of the sidewalk to the removal of certain boards which apparently had been removed therefrom.

The essential facts are, that boards were missing; whether they had fallen through between the stringers upon which the sidewalk was laid or had been broken and fallen to the ground, or had been removed, would not seem to be material. The essential facts are, that the sidewalk was not in a safe condition for persons exercising due care, who had occasion to pass over it. So far as this record discloses the case was well conducted on the part of the city, and the damages are not excessive.

There is no error in the record; and the judgment is

AFFIRMED.

THE other judges concur.